**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| FRANK D. VINSON, | ) | CASE NO:   5:09 CV 505 |
| | ) | |
| Plaintiff, | ) | JUDGE ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| MARGARET BEIGHTLER, Warden | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. Petitioner, Frank D. Vinson, ("Vinson"), challenges the constitutionality of his conviction in the case of *State v. Vinson*, Case No. 2007-04-1150, Summit County, Ohio Court of Common Pleas. Vinson filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 6, 2009 in the United States District Court for the Northern District of Ohio. (Doc. 1.) For the reasons set forth below, it is recommended that the Petition be **DENIED**.

### I.   PROCEDURAL BACKGROUND

**A.   State Conviction**

On April 16, 2007, a Summit County Grand Jury issued an indictment charging

Vinson with one count of Domestic Violence (Ohio Revised Code § 2919.25(A)), one count of Violating a Protection Order (O.R.C. § 2919.27), and one count of Intimidation of Crime Victim or Witness (O.R.C. § 2921.04(A)). (Exhibit 1.) Vinson, through counsel, entered a plea of not guilty to the charges and the court set the case for trial. On May 18, 2007, the State filed a notice of intent to use prior act evidence at trial. (Exhibit 2.) Following a prior acts hearing, the trial court found that there were striking similarities in Vinson's prior domestic violence convictions that demonstrated his mode of operation, as well as intent and guilty knowledge. Accordingly, the court concluded that the other acts evidence would be admissible for those limited purposes. (Acts Hearing Tr., pp. 99-100.) A trial ensued and a jury found Vinson guilty of all counts charged in the indictment. On October 12, 2007, the trial court ordered Vinson to serve an aggregate sentence of five years imprisonment. (Exhibit 4.)

**B.  Direct Appeal**

Represented by different counsel than at trial, Vinson filed a timely appeal to the Ninth District Court of Appeals, Summit County. (Exhibit 5.) Vinson filed his brief on February 26, 2008 and raised the following assignments of error:

> 1. Appellant was denied a fair trial when the trial court permitted other acts evidence to be introduced at trial.
>
> 2. Appellant was denied a fair trial when the trial court admitted Appellant's misdemeanor convictions and improper felonies.
>
> 3. The trial court denied Appellant a fair trial by not permitting him to impeach the victim's testimony.
>
> 4. The trial court erred by admitting only excerpts of recorded conversation.

(Exhibit 6). The State filed a brief in response. (Exhibit 7.) On May 28, 2008, the court

of appeals overruled all four assignments of error and affirmed the judgment of the trial court. (Exhibit 8.)

Vinson, proceeding *pro se*, timely appealed to the Ohio Supreme Court under Case No. 08-1354. (Exhibit 9.) In his memorandum in support of jurisdiction, Vinson presented four propositions of law:

> I. Appellant was denied a fair trial when the trial court permitted other acts evidence to be introduced at trial.
>
> II. Appellant was denied a fair trial when the trial court admitted Appellant's misdemeanor convictions and improper felonies.
>
> III. The trial court denied Appellant a fair trial by not permitting him to impeach the victim's testimony.
>
> IV. The trial court erred by admitting only excerpts of recorded conversation.

(Exhibit 10.) The State waived a response. (Exhibit 11.) On October 15, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional questions. (Exhibit 12.)

### C. Federal Habeas Corpus

Vinson, *pro se*, filed the instant habeas petition on March 6, 2009, which set forth the following grounds for relief:

> Ground One: Petitioner was denied a fair trial when the trial court admitted other acts evidence and misdemeanor convictions at his trial.
>
> Ground Two: The trial court denied Appellant a fair trial by not permitting him to impeach the victim's testimony.
>
> Ground Three: The trial court erred by admitting only excerpts of recorded conversation.

(Doc. No. 1.)

-3-

## II. PROCEDURAL DEFAULT

Respondent asserts that Ground Three is procedurally defaulted and should be dismissed.

When state courts refuse to review the merits of an alleged error because of a cited procedural violation, the petitioner has procedurally defaulted that claim. Even constitutional errors will not be noticed on federal habeas corpus review if an adequate and independent state ground exists for upholding the conviction or sentence. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit's decision in *Maupin* sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule.

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id.* Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim." This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id.* And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497,53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*; *see also Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), *cert. denied*, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

*Greer v. Mitchell*, 264 F.3d 663, 672-73 (6th Cir. 2001).

The procedural default may be excused if the petitioner shows cause for the procedural default and prejudice resulting from the alleged error. *Maupin*, 785 F.2d at 138. In addition, a court may notice an otherwise defaulted claim if a petitioner

demonstrates "actual innocence." This requires the petitioner must use "new and reliable evidence that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 299 (1995), to make a clear and convincing case that, but for a constitutional error, no reasonable juror would have found petitioner guilty of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

In the instant case, Respondent asserts that Ground Three is procedurally defaulted because Vinson failed to contemporaneously object to the ruling of the trial court.

In Ground Three, Vinson asserts that the trial court erred in playing at trial excerpts of a phone conversation between himself and the victim, Melody Grant. The court of appeals, however, did not rule on the merits of this claim and instead held that Vinson failed to preserve the issue for appeal by failing to properly object to the evidence at trial:

> {¶ 23} In his final assignment of error, Defendant asserts that the trial court erred when it allowed, over objection, the State to play only portions of recorded conversations between Grant and the incarcerated Defendant during Grant's direct examination. The conversations took place between April 13-19, 2007, and on June 12, 2007. Defendant maintains that "the excerpts selected were taken out of context and were most likely excerpts that most favored the State" and, therefore, denied Defendant "the opportunity to have his case fully evaluated and considered by the jury and a fair trial." After the CDs were played, Gilbert testified that she and Defendant discussed the current incident during these calls and that Defendant "wanted [her] to come down and say that [the] incident didn't happen" and to refuse to cooperate with the prosecution. Gilbert acknowledged that the recordings indicate that she had been amenable to trying to help Defendant at one point and even told him she would not appear to testify.
>
> {¶ 24} Defendant objected to the phone calls at the time they were played for the jury. The trial court overruled the objection, but indicated that defense counsel might play the entire phone call during cross-examination of Grant "if it's necessary." "The Ohio Supreme Court has explained that 'Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence,

-5-

> unless the excluded evidence is apparent in the record.' " *State v. Barrios*, 9th Dist. No. 06CA009065, 2007-Ohio-7025, at ¶ 8, quoting *State v. Brooks* (1989), 44 Ohio St.3d 185, 195. Here, the transcript reveals that Defendant "failed to proffer to the trial court [the complete content of the CD calls] and how it would have been relevant and material to the defense." *Brooks*, 44 Ohio St.3d at 195. Moreover, Defendant did not attempt to play any of the phone calls during his cross-examination of Grant, thereby challenging the trial court's temporary ruling. Finally, defense counsel did not object to the admission of the phone calls into evidence at the close of the State's case-in-chief. Accordingly, Defendant has failed to preserve this issue for appeal.

(Exhibit 8 at 14-15.)

The Ohio contemporaneous objection rule procedurally bars review of alleged error where counsel fails object to a perceived error at the time that it is made. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112 (1977)).  The Sixth Circuit has consistently held that "'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Mason v. Mitchell*, 320 F.3d 605, 635 (6th Cir. 2003) (quoting *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)).  In the instant case, the court of appeals enforced the contemporaneous objection rule as a procedural bar and, thus, Ground Three is procedurally defaulted.

Moreover, Hines does not assert cause for the procedural default or make a claim of actual innocence.  As such, Ground Three should be dismissed.

### III.  REVIEW ON THE MERITS

#### A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ

-6-

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its *dicta*, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at

-7-

an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.*

### B. Ground One

In Ground One, Vinson asserts that he was denied a fair trial when the trial court admitted "other acts" evidence, specifically evidence of Vinson's prior domestic violence convictions. The court of appeals found that the trial court did not err in admitting this evidence:

> {¶ 3} Defendant argues that he was denied a fair trial because the trial court admitted evidence in violation of Evid. R. 403(B), 404(B), and 609. Specifically, Defendant asserts that the trial court erred when it admitted: (1) testimony about other acts of domestic violence when Defendant had already stipulated to two prior domestic violence convictions; (2) testimony about domestic violence convictions (misdemeanors or fifth-degree felonies) that were not punishable by more than one year in prison; and (3) testimony about other acts that occurred more than ten years ago. The State contends that the trial court properly determined, at a hearing specifically held to address this issue, that the other acts were admissible under Evid.R. 404(B) to "show a system and a mode of operation that this man uses[.]"
>
> {¶ 4} We initially note that our review is limited to whether the trial court incorrectly overruled Defendant's objections to the other acts testimony at trial, rather than the trial court's conclusion at the other acts hearing that the evidence

-8-

was admissible. *State v. Webber* (Aug. 23, 2000), 9th Dist. No. CA3001-M, at *4, citing *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 108 and Regec v. Johnson (Mar. 31, 1995), 9th Dist. No. 15838, at 6. " 'The Ohio Supreme Court has stated that a 'motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial." " *Webber* at *4, quoting *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 4.

{¶ 5} "We review the trial court's admission or exclusion of evidence for an abuse of discretion." *State v. Travis*, 9th Dist. No. 06CA0075-M, 2007-Ohio6683, at ¶ 24, citing *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 22. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Travis* at ¶ 24, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, the appellate court does not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621.

{¶ 6} "The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence.  First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B)." (Internal citations omitted). *State v. Stephens*, 9th Dist. No. 23845, 2008-Ohio-890, at ¶ 14, citing *State v. Broom* (1988), 40 Ohio St.3d 277, 282. *See also, State v. Lowe* (1994), 69 Ohio St.3d 527, 530.

{¶ 7} As we stated in *State v. Roper*, 9th Dist. No. 22566, 2005-Ohio 6327, judgment reversed on other grounds:

> "Generally, evidence of prior criminal acts completely independent of the crime for which a defendant is being tried, is inadmissible. *State v. Wilkins* (1999), 135 Ohio App.3d 26, 29, 732 N.E.2d 1021, citing *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 422 N.E.2d 855. However, an exception to this general rule exists, as provided for in R.C. 2945.59 and Evid.R. 404(B). [*State v. Ali* (Sept. 9, 1998), 9th Dist. No. 18841]. Evid.R. 404(B) provides that evidence of such crimes, wrongs or acts may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid. R. 404(B) provides the following:
>
>> " 'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

> plan, knowledge, identity, or absence of mistake or accident.'

"R.C. 2945.59 reads:

> " 'In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, not[w]ithstanding that such proof may show or tend to show the commission of any other crime by defendant.]' " (Emphasis sic.) *Roper* at ¶ 8.

We further noted that:

> "[T]the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. *Ali, supra*, citing [*Broom*, 40 Ohio St.3d at paragraph one of the syllabus.] However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court 'occupies a "superior vantage" in determining the admissibility of evidence' *Ali, supra*, citing *State v. Rutledge* (Nov. 19, 1997), 9th Dist. No. 96CA006619." *Roper* at ¶ 9.

{¶ 8} There is no dispute that the other acts at issue were committed by Defendant. Thus, the first prong of *Broom* is satisfied. The following other acts evidence was admitted under Evid.R. 404(B), over the objection of defense counsel, purportedly to "show a system, a mode of operation that [Defendant] uses":

> 1. Sergeant Williams testified that he responded to a domestic disturbance on March 7, 1993, at 1332 Brittain Road, between Defendant and the mother of his children, Yolanda Fletcher, in which Fletcher alleged that Defendant threw a phone through a window and choked her. Defendant was arrested for domestic violence, intoxication, and contempt. Defendant was convicted of domestic violence, a first-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Williams reviewed past paperwork to refresh his recollection prior to testifying and knew of no connection between the 1993 incident and the current case.

> 2. Officer Kulick testified that he responded to a domestic violence call on May 5, 1995, between Defendant and Fletcher, in which Fletcher alleged that Defendant elbowed her because she refused to co-sign a car loan for

Defendant. Defendant was arrested for domestic violence, pled guilty, and was convicted of domestic violence menacing, a fourth-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Kulick reviewed past paperwork to refresh his recollection prior to testifying.

3. Officer Pozuc testified that he responded to an incident on November 11, 1995, at Rocky's Skating Rink, between Defendant and Defendant's mother, Fairy Vinson, in which Ms. Vinson alleged that Defendant threw a plastic bucket at her but hit and broke a glass door instead. Witnesses to the incident also indicated that Defendant tried to choke Ms. Vinson. Defendant was arrested for domestic violence, pled guilty, and was convicted of a fourth-degree misdemeanor, as evidenced by a journal entry admitted into evidence. Pozuc reviewed past paperwork to refresh his recollection prior to testifying.

4. Sergeant Congrove testified that he responded to a domestic violence incident on August 17, 1996, at 970 Cordova, between Defendant and Fletcher, in which Fletcher alleged that Defendant hit her in the head with a phone. Defendant was arrested for domestic violence and convicted of a first-degree misdemeanor, as evidenced by the journal entry admitted into evidence. Congrove reviewed past paperwork to refresh his recollection prior to testifying.

5. Officer Webb testified that he responded to a domestic violence call on July 15, 2005, at 394 Wildwood Avenue, between Melody Grant and Defendant, in which Grant alleged that Defendant punched and kicked her after she refused to give him $5.00. Defendant was arrested for domestic violence, pled guilty, was convicted of a third-degree felony, and sentenced to one year of incarceration, as evidenced by a journal entry admitted into evidence. Webb reviewed past paperwork to refresh his recollection prior to testifying.

6. Melody Grant, the victim in this case, testified during direct examination about the incident about which Webb had testified. Grant alleged that Defendant pushed and kicked her because she did not have money to give him to purchase crack cocaine. Grant testified that Defendant was convicted of domestic violence for this incident.

7. Grant summarized a portion of a recorded telephone call between herself and Defendant that was played for the jury. Grant indicated that the conversation referred to a "beating" she got from Defendant in September after Defendant, who was intoxicated, accused her of cheating on him. Grant explained that she did not call the police as a result of this incident although she was "beat up real bad" and it took "three months to

> get [her] face back in order."
>
> 8. Detective King testified that she investigated a complaint made on August 6, 1997, from 513 Zahn Drive, in which Fletcher alleged that Defendant beat her up and sexually assaulted her. Defendant was arrested and later pled guilty to, and was convicted, of domestic violence and gross sexual imposition, as evidenced by a journal entry admitted into evidence. Webb reviewed past paperwork to refresh his recollection prior to testifying.

{¶ 9} As noted above, the trial court ruled that the other acts evidence was admissible under Evid.R. 404(B) to "show a system and a mode of operation that this man uses[.]" We agree that this evidence is admissible under Evid.R. 404(B) but on other grounds set forth in *Roper* and Evid.R. 404.

{¶ 10} Defendant claimed that Grant's injury was an accident and that she was injured when the two of them were struggling over a bottle of wine. Defendant testified that, "[Grant] wouldn't let [the bottle of wine] go and she pulled it this way, I pulled it that way and finally I let it go and she fell over the crate." Defendant testified that Grant must have cut her leg when she accidentally fell because he did not hit her or otherwise cause the cut. "Based on Defendant's contentions [that Grant was accidentally injured], we cannot conclude the trial court abused its discretion by permitting prior acts evidence regarding Defendant's history of domestic violence" to suggest that Grant's injuries were not an accident. *Roper* at ¶ 13.

{¶ 11} As to Defendant's contention that some of the other acts were inadmissible because they occurred more than ten years prior to the incident at issue, we hold "that the other acts and the instant incident occurred 'reasonably near to each other[.]' " *State v. Stephens*, 9th Dist. No. 23845, 2008-Ohio-890, at ¶ 17, quoting *State v. Blonski* (1996), 125 Ohio App.3d 103, 113. *See, also, State v. Partee,* 9th Dist. No. 23643, 2007-Ohio-5114, at ¶ 12 (finding no error in the admission of other acts that occurred 12 years prior); R*ope*r at ¶ 11-12 (finding no error in the admission of other acts evidence that occurred over a span of 27 years prior to the incident at trial because "intent, purpose and knowledge are elements of several of the crimes charged," thereby making the other act evidence "particularly relevant." *Id.* at ¶ 12). The other acts testimony here shows intent and knowledge and clearly shows absence of a mistake or accident. *See Roper* at ¶ 13.

{¶ 12} We also note that the trial court gave the jury limiting instructions on how they could consider the other acts evidence. During trial, the trial court instructed the jury as follows:

> "[The other acts evidence] was received * * * to show that [Defendant]

>committed the prior acts of domestic violence, but you may not consider this evidence-and this is the limitation now that I'm giving you on your consideration of this evidence-you may not consider the evidence to prove the character of this defendant in order to show conformity and accordance with that character in the case before you.
>
>* * *
>
>"[Y]ou can consider it for the purpose of exploring, analyzing, determining his motive and his method of operation in this case."

{¶ 13} At the close of trial, the trial court instructed:

>"[C]oncerning the prior acts evidence, evidence was received that the defendant committed prior acts of domestic violence. You may not consider the evidence presented to prove the character of the defendant in order to show conformity in accordance with that character in the case before you."

{¶ 14} Based on the foregoing, we do not find that Defendant was prejudiced in any way when the trial court permitted the testimony of other acts witnesses. Defendant's first and second assignments of error are overruled.

(Exhibit 8.)

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  See *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).  The United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  See *Dowling v. United States*, 493 U.S. 342, 352-53 (1990).  Thus, "[t]here is no clearly established Supreme Court precedent which holds that a

state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, no Supreme Court precedent exists that the state court decision could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513.

Furthermore, even if Vinson states a cognizable claim that the evidentiary ruling was erroneous, he is not entitled to relief in this case.   Even if the prior convictions were inadmissable, Vinson does not demonstrate that the admission of this evidence rendered his trial fundamentally unfair.  The prosecutor did not make a character or propensity argument regarding this evidence and the trial court twice issued cautionary instructions to the jury about the proper consideration of the other acts evidence.  Vinson does not show that the admission of the disputed evidence amounted to a due process violation.  Therefore, Ground One lacks merit.

**C.   Ground Two**

In Ground Two, Vinson argues that the trial court erred in not allowing him to impeach the credibility of the victim on cross-examination by introducing evidence of her previous convictions and voicemails that the victim left on Vinson's cell phone.  The court of appeals held that the trial court did not err in its decision:

> {¶ 16} As noted above, "[w]e review the trial court's admission or exclusion of evidence for an abuse of discretion." *Travis* at ¶ 24, citing *Apanovitch*, 33 Ohio St.3d at 22. Evid. R. 613(B) allows for the impeachment of a witness with a prior inconsistent statement. Grant admitted to lying under oath about where she lived. Accordingly, there was no need to impeach Grant's prior statement as to her address at the time of the crime. Moreover, evidence about Grant's criminal background and motive to fabricate would not have contradicted Grant's previous statements about her residence. Instead, it is Evid.R. 608 that is applicable to our analysis. Evid.R. 608 states:
> 
> > "(A) Opinion and reputation evidence of character

-14-

> "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject only to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> "(B) Specific instances of conduct
>
> "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witnesses's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness of another witness[.]"

{¶ 17} We initially note that there is nothing in the record to establish that Grant has been convicted of a crime, thereby implicating Evid. R. 609. Moreover, the questions posed by defense counsel about Grant's alleged convictions for domestic violence, resisting arrest, and disorderly conduct, do not go to her character for truthfulness or untruthfulness and are inadmissible under Evid. R. 608(A) and (B). The trial court properly sustained the State's objection to questions related to Grant's alleged criminal history.

{¶ 18} As to the voicemails left by Grant on Defendant's cell phone, Defendant asserted at trial that the calls were relevant to show: (1) the volatile relationship between Defendant and Grant; (2) Grant's noticeable intoxication when she testified that she did not drink; and (3) Grant's state of mind after the incident. The trial court disallowed the evidence, finding Grant's state of mind four months after the incident not relevant to the conduct in April of 2007. Defense counsel then proffered the tapes for the record.

{¶ 19} We initially note that although Defendant's appellate brief argues that the voicemail evidence demonstrated Grant's motive to fabricate, defense counsel did not specifically make such an argument to the trial court. However, as evidence of Grant's state of mind could relate to a motive to fabricate or bias, we have listened to the audio tapes to determine if the trial court erred in excluding them.

{¶ 20} In *United States v. Abel* (1984), 469 U.S. 45, "the Court explained that 'bias' is a term used in the law to describe the relationship between a party and a witness which might cause the witness to slant or alter her testimony in favor of [or] against the party." *State v. Lavery* (Oct. 24, 2001), 9th Dist. No. 20591, at *6,

> citing *Abel,* 469 U.S. at 52. "Bias may be induced by a witness'[s] like, dislike, or fear of a party, or by the witness' [s] self-interest. Proof of bias is almost always relevant because the jury and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' [s] testimony." *Abel,* 469 U.S. at 52.
>
> {¶ 21} After a review of the audio tape, we find that although there was a relationship between Defendant and Grant, the voicemails have no relevance to Defendant's domestic violence charge, except to bolster the State's case, and do not demonstrate bias. Specifically, the proffer does not demonstrate how Grant's relationship with Defendant might have led Grant to slant or fabricate her testimony against Defendant. *See, id.* Rather, the voicemails simply demonstrated that Grant was angry because Defendant beat her, because Defendant's family was calling and harassing her, and because she could not get her possessions from Defendant's apartment, the latter two events which occurred after the incident at issue in this case. For the foregoing reasons, we hold that the trial court did not abuse its discretion by sustaining the State's objection to the admission of the voicemail tapes and refusing to admit them.

(Exhibit 8.)

As stated previously, alleged trial errors in the application of evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. at 67-68. "[Q]uestions concerning the admission of evidence that may be unfairly prejudicial are committed to the sound discretion of the trial court." *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593, n. 3 (6th Cir.1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions .' ") (citations omitted). Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994).

To the extent that Vinson argues that the failure to admit evidence of the victim's prior convictions and the voicemail recordings rendered his trial fundamentally unfair his argument lacks merit.

As noted by the state appellate court, the victim's alleged convictions of domestic violence, resisting arrest, and disorderly conduct simply do not bear on a witness's honesty and are irrelevant.  The inclusion of evidence of these convictions would do nothing to show that the victim was lying or had a history of dishonesty.  It is unclear how the failure to admit cross-examination regarding these irrelevant, alleged convictions resulted in the deprivation of due process, particularly when the victim admitted during her courtroom testimony that she had lied about where she lived.

In addition, Vinson fails to demonstrate that he was denied a fundamentally fair trial when the trial court refused to allow the defense to play recordings left by the victim on Vinson's voicemail.  In his petition, Vinson argues that the tapes "contained [the victim's] motive to fabricate" but provides no further insight as to the contents of these recordings.  The only information about the tapes before this court is that they are voicemails left by the victim which demonstrate that she was angry because Vinson beat her, because Vinson's family was harassing her, and because she could not get her possessions from Vinson's apartment.  It is simply unclear why this evidence would demonstrate that the victim was lying or had motive to lie about events four months prior to the voicemails.  In fact, the evidence appears to bolster the state's case.  Vinson has not demonstrated that the exclusion of this evidence amounts to a denial of fundamental fairness.  Therefore, Ground Two lacks merit.

-17-

## V.  CONCLUSION

For the foregoing reasons, it is recommended that Vinson's petition for habeas relief be **DENIED**.


Date:  October 30, 2009                                  /s/ Nancy A. Vecchiarelli
                                                           United States Magistrate Judge


## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**